**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Kevin Underwood, | ) | |
| | ) | **Execution Date:** |
| Plaintiff, | ) | **December 19, 2024 at 10:00**AM |
| | ) | |
| v. | ) | _____ |
| | ) | Case No. CIV-24-1266-G |
| Oklahoma Pardon and Parole | ) | |
| Board; Tom Bates, in his official | ) | |
| capacity as Director of the | ) | |
| Pardon and Parole Board; Richard | ) | |
| Miller, in his official capacity as | ) | |
| Chairperson of the Pardon and | ) | |
| Parole Board, | ) | |
| | ) | |
| Defendants. | ) | |

## Introduction

1.     The Oklahoma Constitution guarantees Kevin Underwood a meaningful opportunity to present his case for clemency to an impartial, five-member parole board. But after two resignations, the Pardon and Parole Board is hastily moving forward with Underwood's clemency hearing before a three-member board. Removing two potential votes for clemency at this late hour violates Underwood's rights to due process and a fair clemency proceeding. And the Board's last-minute change of the hearing date has prevented Underwood's expert and one of his lawyers from presenting at his clemency hearing, again violating Underwood's due process rights and his right to counsel under 18 U.S.C. § 3599(e).

1

2.      The Board's actions significantly and arbitrarily weaken Underwood's opportunity to be heard and his chances of obtaining a favorable clemency recommendation. This Court should declare Underwood is entitled to full, fair, and nonarbitrary access to Oklahoma's clemency proceedings before a five-member board with meaningful representation. At a minimum, this Court should recognize the last-minute changes violate Underwood's "opportunity to be heard at a meaningful time and in a meaningful manner." *McDonald v. Wise*, 769 F.3d 1202, 1212-13 (10th Cir. 2014) (citations and internal quotation marks omitted).

3.      A man's life is on the line. Underwood's interest in a fair clemency proceeding far outweighs the Board's interest in having the clemency hearing on December 9, 2024, as opposed to another time in the near future.

## Jurisdiction and Venue

4.      Underwood invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. His claims are brought under 42 U.S.C. § 1983.

5.      Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b).

6.      The Oklahoma Pardon and Parole Board (PPB) and its officials are headquartered in Oklahoma City, Oklahoma. All events alleged herein occurred within the State of Oklahoma.

**Parties**

7.    Underwood is housed at the Oklahoma State Penitentiary in McAlester, Oklahoma. He is under a sentence of death. His execution is scheduled for December 19, 2024, at 10AM.

8.    The Oklahoma Constitution created the Pardon and Parole Board. Okla. Const. Art. VI, § 10. It is the "duty of the Board to make an impartial investigation and study of applicants for commutations, pardons or paroles, and by a majority vote make its recommendations to the Governor of all persons deemed worthy of clemency." *Id*.

9.    Defendant Richard Miller is the chairperson of the Board. He is charged with scheduling clemency hearings, and he presides over the hearing. Okla. Admin. Code §§ 515:10-3-1, 515:10-5-2. The chairperson is also charged with ensuring clemency materials are properly submitted. *Id*. at § 515:10-5-1.

10.    Defendant Tom Bates is the executive director of the Board. He is charged with ensuring the relevant parties are notified of an upcoming clemency hearing. *Id*. at § 515:10-3-2. He also oversees the day-to-day operations of the Board.

**Relevant Facts**

11.    Oklahoma is unique among death-penalty states because it provides robust clemency hearings for death row prisoners. These hearings generally last

3

around three hours, and experts and witnesses are routinely presented. The Board votes on whether to recommend clemency at the end of the hearing.

12.     On October 1, 2024, the Oklahoma Court of Criminal Appeals set Underwood's execution for December 19, 2024. Order, *Underwood v. State*, D-2008-319 (Okla. Crim. App. Oct. 1, 2024).

13.     On October 2, 2024, General Counsel for the Board emailed Underwood's legal team informing them that Underwood's clemency hearing was scheduled for December 4, 2024, at 9AM. Att. 1.

14.     Relying on the notice, Underwood's legal team made travel arrangements for Underwood's expert psychologist Dr. Kim Spence to attend the hearing. She is a psychologist and expert in autism spectrum disorder, which is one of Underwood's disabilities. Dr. Spence has met with Underwood on multiple occasions, digested thousands of pages of records, and interviewed three of Underwood's family members. Her testimony alone is anticipated to amount to more than half of Underwood's clemency presentation.

15.     Also relying on the December 4 notice, Hunter Labovitz, one of Underwood's lawyers, committed to represent another one of his capital clients at a federal evidentiary hearing scheduled to start December 5, 2024, and run through December 11, 2024. *See* Minute Order, *United States v. Edward Fields*, No. 03-cr-73 (E.D. Okla. Oct. 23, 2024), ECF No. 418 (Oct. 23, 2024); Minute Order, *United*

*States v. Edward Fields*, No. 03-cr-73 (E.D. Okla. Nov. 6, 2024), ECF No. 424.

Labovitz specifically requested to the federal court that the evidentiary hearing begin

after Underwood's clemency hearing.

16.    On December 2, 2024, two days before Underwood's scheduled

hearing, the Board's General Counsel informed Underwood's legal team that the

December 4 hearing was cancelled due to unexpected resignations. The hearing was

rescheduled for December 9, 2024, at 9AM.

17.    With so little notice, Underwood's lawyer Hunter Labovitz and his

expert Kim Spence cannot attend the December 9 hearing. Underwood's legal team

planned for most of his clemency presentation to be presented by these two people.

Dr. Spence did not prepare a report, and she always planned to offer her opinion to

the Board in person. Underwood's remaining lawyer is unqualified to present her

expert opinion. The remaining lawyer also graduated law school in 2020 and has far

less experience than Labovitz, who has been a death penalty defense lawyer since

1996.

18.    Labovitz cannot attend the December 9 clemency hearing because the

federal evidentiary hearing in *Edward Fields* continues through December 11, and

on December 9, the hearing starts at 9AM and will last all day. Dr. Spence is currently

booked that day, but she is trying to make arrangements to appear via Zoom. In any

event, the late and arbitrary change to Underwood's clemency hearing ensures he will lack live and effective testimony from his expert.

19.    Before the hearing was rescheduled, the Oklahoma Attorney General sought mandamus in the Oklahoma Court of Criminal Appeals. Emergency Petition for Writ of Mandamus, *Drummond v. Pardon and Parole Board*, No. MA-2024-943 (Okla. Crim. App. Dec. 2, 2024). The Attorney General argued he had a clear legal right to have Underwood's clemency hearing on December 4, 2024. The Court of Criminal Appeals dismissed the petition on December 4, 2024. Order, *Drummond v. Pardon and Parole Board*, No. MA-2024-943 (Okla. Crim. App. Dec. 4, 2024).

20.    On December 2, 2024, General Counsel for the Board also informed Underwood's legal team that the clemency hearing will go forward with only three members: Acting Chairperson Richard Miller, Kevin Buchanan, and Robert Reavis. Att. 2.

## Applicable Law

21.    The Supreme Court has stressed that "capital punishment [must] be imposed fairly, and with reasonable consistency, or not at all." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982).

22.    To ensure that the most fundamental right—the right to life—is not unfairly or arbitrarily extinguished, the State of Oklahoma has provided an additional safeguard by providing robust clemency proceedings. *See Ford v.*

*Wainwright*, 477 U.S. 399, 409 (1986) (plurality opinion) (recognizing the "fundamental right to life").

23.    "Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera v. Collins*, 506 U.S. 390, 411-12 (1993). "Executive clemency has provided the 'fail safe' in our criminal justice system." *Id.* at 415.

24.    "In authorizing federally funded counsel to represent their state clients in clemency proceedings, Congress ensured that no prisoner would be put to death without meaningful access to the 'fail-safe' of our justice system." *Harbison v. Bell*, 556 U.S. 180, 194 (2009).

25.    Recognizing this historic remedy, the Oklahoma Constitution "created a Pardon and Parole Board to be composed of five members." Okla. Const. Art. VI, § 10.

26.    Board members have a constitutional duty to "make an impartial investigation and study of applicants for commutations, pardons or paroles, and by a majority vote make its recommendations to the Governor of all persons deemed worthy of clemency." *Id.*

27.    At the same time, the federal constitution requires "the minimal application of the Due Process Clause [which] only ensures a death row prisoner that

Case 5:24-cv-01266-G    Document 1    Filed 12/04/24    Page 8 of 17

he or she will receive the clemency procedures explicitly set forth by state law, and that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." *Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir.1998) (citing *Ohio Parole Authority v. Woodard*, 523 U.S. 272, 289 (O'Connor, J., concurring)).

28.    Although the "minimal due process constraints on clemency proceedings are far more limited," this Court focuses "solely on the Board's compliance with its own rules and its avoidance of wholly arbitrary or capricious action." *Gardner v. Garner*, 383 F. App'x 722, 726 (10th Cir. 2010).

**Claim One**
**Due Process Violation Under the**
**Fourteenth Amendment to the Constitution of the United States**

29.    All statements of fact contained in this Complaint are hereby incorporated into this paragraph as though set forth fully herein.

30.    To establish a due process violation, Underwood must show "a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

31.    Underwood has a protected due process interest ensuring he "will receive the clemency procedures explicitly set forth by state law, and that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." *Duvall v. Keating*,

162 F.3d 1058, 1061 (10th Cir.1998) (citing *Ohio Parole Authority v. Woodard*, 523 U.S. 272, 289 (O'Connor, J., concurring)).

32.    Because the five-member board is explicitly set out in Oklahoma's Constitution, Underwood has a liberty and property interest in having a five-member board vote on his clemency petition. More than a statute, the Oklahoma Constitution guarantees Underwood a five-member board. Okla. Const. Art. VI, § 10.

33.    In other words, Oklahoma's clemency procedures, which are "explicitly set forth by state law," require a five-member board and an impartial investigation. *Duvall*, 162 F.3d at 1061; Okla. Const. Art. VI, § 10. That explicit guarantee creates a due process interest for Underwood. *Id*.

34.    The Oklahoma Constitution also guarantees that of the five members, "three [are] to be appointed by the Governor; one by the Chief Justice of the Supreme Court; one by the Presiding Judge of the Criminal Court of Appeals or its successor." *Id*. This distribution established a balance between the Governor and the Judiciary. Moving forward without two of the Governor's picks upsets this constitutionally established balance.

35.    Additionally, as the Attorney General has admitted, the Board's abrupt "cancelation of the clemency hearing did not comply with [Oklahoma's] Open Meeting Act." Petitioner's Brief in Support of Emergency Petition for Writ of

Mandamus at 5-7, *Drummond v. Pardon and Parole Board*, No. MA-2024-943

(Okla. Crim. App. Dec. 2, 2024).

36.    Oklahoma's Open Meetings Act regulates how and when meeting may

be scheduled or rescheduled:

> All meetings of public bodies, as defined hereinafter, shall be held at specified
> times and places which are convenient to the public and shall be open to the
> public, except as hereinafter specifically provided. All meetings of such
> public bodies, except for executive sessions of the State Banking Board and
> Oklahoma Savings and Loan Board, shall be preceded by advance public
> notice specifying the time and place of each such meeting to be convened as
> well as the subject matter or matters to be considered at such meeting, as
> hereinafter provided.

Okla. Stat. tit 25, § 303.

37.    The Act continues,

> If any change is to be made of the date, time or place of regularly scheduled
> meetings of public bodies, then notice in writing shall be given to the
> Secretary of State or county clerk or municipal clerk, as required herein, not
> less than ten (10) days prior to the implementation of any such change.

*Id*. at § 311(A)(B).

38.    The Board cancelled the December 4 clemency hearing with only two

days' notice, far less time than the ten days required by the Open Meetings Act. It

then rescheduled the hearing to take place in seven days, again less than the required

ten days. As the Attorney General argued, "even assuming the Open Meetings Act

allows for cancelations with less notice in emergency situations, no such emergency

exists here where the Board has a quorum and could proceed on the scheduled

hearing date." Petitioner's Brief in Support of Emergency Petition for Writ of Mandamus at 6, *Drummond v. Pardon and Parole Board*, No. MA-2024-943 (Okla. Crim. App. Dec. 2, 2024).

39.    The Attorney General went on to claim, "on information and belief, the Board was aware as of November 6, 2024 (the last day of the Board's regular November meeting) that Chairman Konieczny would not participate in the December meeting (to include Underwood's clemency hearing). Thus, the Board has planned for weeks to hold Underwood's hearing with less than the full complement of members. It is unclear why the loss of an additional member is relevant so long as there remains a quorum." *Id*. at 7.

40.    Underwood agrees with the Attorney General. The Board flagrantly violated Oklahoma's Open Meeting Act. By doing so, it violated Underwood's due process rights by ignoring "procedures explicitly set forth by state law." *Duvall*, 162 F.3d at 1061.

41.    As the Attorney General notes, the Board's policies do permit Board meetings    with    a    quorum    of    three    members.    Policy    101, https://oklahoma.gov/ppb/about/policy-procedures.html.  But a clemency hearing is not a Board meeting, and the Oklahoma Administrative Code governing clemency hearings says nothing about proceeding with less than five members. *See* Okla. Admin. Code § 515. Rather, the relevant Code says that "'Clemency hearing' means

a hearing before the Board for an Inmate on death row who has been scheduled for execution by the Court of Criminal Appeals," and "'Board' means the Pardon and Parole Board." Okla. Admin. Code § 515:1-1-2. Most importantly, the state constitution explicitly states, "a Pardon and Parole Board to be composed of five members." Okla. Const. Art. VI, § 10. Board policy cannot overrule the relevant clemency guidelines of the Oklahoma Administrative Code and the Oklahoma Constitution.

42.    *Duvall*'s suggestion that a board comprised of fewer than five members passes constitutional muster is not controlling here. 162 F.3d at 1062 n.2. In *Duvall*, the plaintiff only raised a claim based on the Board's tie vote. *Id*. The Attorney General has admitted as much. Unlike Underwood, Duvall did not challenge the Board's actions based on the Oklahoma Constitution's guarantee of a five-member board. *Id*. Thus, Underwood's claim has never been squarely addressed by the Tenth Circuit.

43.    Moreover, by statute, "at least two members of the Pardon and Parole Board shall have five (5) years of training or experience in mental health services, substance abuse services, or social work." Okla. Stat. tit. 57, §332.1B. Chairperson Miller is listed on the website for the Board as one of the two members with mental health experience and training. But the other two members' qualifications do not

include this requirement. *See* Board Members, Oklahoma Pardon and Parole Board, https://oklahoma.gov/ppb/about/board-members.html.

44.    Former member Prince, who unexpectedly resigned last week, was the Board's second member to satisfy the mental health requirement. *See* Att. 3. Currently, the Board only has one member of a required two who have mental health training or experience. Again, the Board is trying to move forward with Underwood's clemency hearing despite clear violations of state law and the Board's own rules.

45.    The Board's lack of two members trained in mental health is especially damaging to Underwood because his clemency case is fundamentally about his serious mental health problems. Underwood had never been in trouble before his crime, and he has never received any disciplinary infractions while in prison. His crime came out of a mental health break, and Underwood is entitled to present this information to a Board with two members with mental health experience.

46.    Simply put, the Board must follow the rules and procedures that govern clemency hearings, and it must follow the Oklahoma Constitution and Oklahoma Law. It has failed to do so, and Underwood is now expected to pay the price. Rescheduling Underwood's clemency hearing is a minimal inconvenience to the Board, but it is life or death for Underwood. *See McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).

**Claim Two**
**Violation Under 18 U.S.C. § 3599(e).**

47.    All statements of fact contained in this Complaint are hereby incorporated into this paragraph as though set forth fully herein.

48.    Federal law guarantees Underwood the assistance of counsel during the clemency process. 18 U.S.C. § 3599(e); *Harbison v. Bell*, 556 U.S. 180, 183-85 (2009); *Hain v. Mullin*, 436 F.3d 1168, 1172-75 (10th Cir. 2006) (en banc).

49.    The Board's abrupt postponing and rescheduling of Underwood's clemency hearing amount to a denial of a fair hearing and the meaningful assistance of counsel during the clemency process. The last-minute change has ensured one member of Underwood's legal team cannot attend the hearing at all and his only expert cannot attend the hearing in person, as originally planned.

50.    Moreover, not only does the Board expect Underwood to move forward without one of his lawyers, but it expects him to move forward with his far less experienced lawyer. Just two days ago, Underwood's legal team included decades of experience in capital litigation and clemency presentations. Now, Underwood's legal team has only four years of experience.

**Claim Three**
**Due Process Violation Under the**
**Fourteenth Amendment to the Constitution of the United States**

51.    All statements of fact contained in this Complaint are hereby incorporated into this paragraph as though set forth fully herein.

52.     "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *McDonald v. Wise*, 769 F.3d 1202, 1212-13 (10th Cir. 2014) (citations and internal quotation marks omitted).

53.     Even if Underwood is not entitled to a five-member Board, removing two members at this late hour still violates Underwood's due process rights because the burden of proof has been changed.

54.     The number of board members is not meaningless. To recommend clemency, the petitioner must receive a majority of the board members. Obtaining three votes of five is easier than obtaining two of three. In other words, the last-minute change to the number of board members has made it more unlikely that Underwood would receive clemency.

55.     With last-minute changes to the Board and rescheduling the hearing, Underwood must now present to a Board missing two members and with a legal team missing at least one member and potentially two. These last-minute changes significantly and arbitrarily impact Underwood's right to be heard in a meaningful way.

56.     Underwood must get a majority of the Board's votes. With five members, he needed three votes or 60%. Now with three members, he needs two votes or 66% of the vote. One of the missing votes is also one of the members with

mental health experience. So not only has Underwood's burden changed, but he is presenting to a Board that is less experienced and may not fully understand his mental health arguments.

57.    Underwood's clemency hearing should not go forward with only one of his three team members and only three of the five board members. Hastily moving forward with Underwood's clemency hearing will significantly harm his right to full, fair, and nonarbitrary access to Oklahoma's clemency proceedings, and his chances of obtaining a favorable clemency recommendation. At the same time, the Board will be minimally harmed by rescheduling the clemency hearing, something it has already done once this week. Nor will the Board be harmed if it is required to follow state law and its own rules.

58.    The Board's last-minute scheduling violates due process because the hearing, with half a board and half a legal team, will be "wholly arbitrary, capricious or based upon whim, for example, flipping a coin." *Duvall*, 162 F.3d at 1061.

### Relief Requested

Plaintiff respectfully request the following relief:

A. That a declaratory judgment be awarded declaring that Oklahoma must comply with the state law's five-member Board requirement, otherwise proceeding with a three-member board will violate the Fourteenth Amendment to the United States Constitution.

B. That the State of Oklahoma be enjoined from executing Underwood until the completion of clemency proceedings that comply with state and federal laws and procedures.

C. Such other relief to which the Plaintiff may be entitled.

Respectfully submitted on December 4, 2024.

_s/ Hunter Labovitz_
Hunter Labovitz, NJ Bar 010942006
Brendan Van Winkle, SC Bar 104768
Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Oklahoma
405-609-5975
Hunter_Labovitz@fd.org
Brendan_VanWinkle@fd.org

Counsel for Kevin Underwood